

**NUMBER 13-16-00128-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**TRAVIS MAGILL,**                                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                      **Appellee.**

---

**On appeal from the 347th District Court
of Nueces, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Longoria
Memorandum Opinion by Justice Benavides**

By two issues, appellant Travis Magill challenges his conviction for: (1) attempted capital murder of a peace officer of Michael Goodman, (2) attempted capital murder of a peace officer of Amador Gonzalez, both first-degree felonies, *see* TEX PENAL CODE ANN. §§ 15.01, 19.02(b)(1), 19.03 (West, Westlaw through 2017 1st C.S.); (3) unauthorized use of Michael Goodman's vehicle, a state-jail felony, *see id.* § 31.07 (West, Westlaw through 2017 1st C.S.); and (4) possession of a controlled substance, penalty group one:

methamphetamine, a state-jail felony, *see* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (West, Westlaw through 2017 1st C.S.). Magill alleges: (1) that the trial court committed reversible error by submitting an erroneous jury instruction on self-defense, and (2) the evidence was legally and factually insufficient to support the jury's rejection of his affirmative defense of self-defense. We affirm.

## I. BACKGROUND

On March 20, 2014, Corpus Christi Police Officer Michael Goodman responded to the area near the Corpus Christi Country Club to help investigate a report regarding a suspicious person. Officer Goodman testified that he saw a male, Magill, who matched the description of the suspicious person and made contact. Officer Goodman stated that he had no intention of arresting Magill, but just wanted to identify him. Magill stated to Officer Goodman that he was carrying a knife, so Officer Goodman preceded to conduct a pat-down search of Magill for his safety.

As Officer Goodman was conducting the pat-down search of Magill, Officer Amador Gonzalez, also with the Corpus Christi Police Department, arrived at the scene. Officer Gonzalez stated he did not have his handgun drawn when he exited his vehicle, but noticed that Magill looked "like a deer in the headlights" and suspected Magill might try to run away. Officer Goodman also noticed Magill flinch and felt that Magill was a flight risk. Almost immediate to the officers noticing Magill's behavior, Magill attempted to run away and Officer Goodman attempted to grabbed ahold of Magill's shorts. When Magill spun around, he proceeded to pull a handgun out of his waistband that was previously unnoticed. Officer Goodman testified that as Magill pulled him forward, he heard three to

2

four gunshots, and realized he had been shot. Officer Gonzalez approached as the scuffle between Officer Goodman and Magill occurred and drew his handgun.

Officer Gonzalez testified that he thought Officer Goodman was dead because Magill was right on top of Officer Goodman and fired at him from point-blank range. Officer Gonzalez explained that he and Magill began "tracking" each other across the front lawn of a nearby home and Magill ended up shooting Officer Gonzalez in the leg. Officer Gonzalez returned fired and believed he hit Magill because he saw Magill hopping on one leg like he was injured. Officer Gonzalez testified that he did not shoot before Magill did.

Officer Gonzalez explained he was worried Magill would run into a nearby home and moved back towards his police cruiser to obtain his police rifle. Officer Gonzalez saw Magill run towards Officer Goodman's police SUV. Officer Gonzalez was concerned because Magill still had his handgun out, and Officer Gonzalez knew that Officer Goodman also had a police rifle in his vehicle. Officer Gonzalez shot at Officer Goodman's police SUV, shooting out some of the windows in the vehicle, as Magill drove away at a high rate of speed. Officer Gonzalez's patrol dashboard camera recorded part of but not all of the entire incident.

Officer Gonzalez admitted that the dash camera video shows him shooting towards Magill without looking. He also explained how he tried to use "cover fire" to move toward his vehicle and testified that Officer Goodman was not in his line of fire. He also made a statement to police following the incident that he heard Magill claim to have a knife as Officer Gonzalez exited his vehicle.

James Perkins, who lived in the neighborhood, testified for the State. He said he had gone out to get his mail and saw a police officer speaking to someone. Perkins

3

identified Magill and stated he had never seen him before in the neighborhood. Perkins also saw Officer Goodman pointing a baton, poking at the backpack Magill was wearing. Perkins speculated that Magill panicked, and then he testified "that's when everything happened." According to Perkins, he saw Magill pull a gun and shoot at Officer Goodman. Perkins also saw Officer Gonzalez and stated that Magill shot before Officer Gonzalez. However, he later stated that Officer Gonzalez "started shooting when he—when [Magill] shot—the first cop pulled his and defended it—again, it was simultaneously. I mean, with this guy and this cop or this police officer and this police, it was all pretty simultaneously." In further testimony, Perkins stated Magill shot first and Officer Gonzalez returned fire. On cross-examination by Magill, Perkins admitted he could not hear the conversation between Officer Goodman and Magill, he saw Officer Goodman and Magill "fall down on top of each other and [Officer Gonzalez] is simultaneously shooting at the same time," and he heard eight to ten gunshots combined between Magill and Officer Gonzalez.

Near the same time, Corpus Christi Officer Michael Frankes saw a police SUV exit the country club area at a high rate of speed in front of him, and crash into a light pole. The accident caused the police SUV to come to a stop. Officer Frankes noticed it was not a police officer driving the SUV, so he drew his duty weapon, approached the driver's door, and found Magill slumped over in the driver's seat, semi-conscious. Since Officer Frankes could not see both of Magill's hands, he pulled Magill out of the police SUV for his own safety. Officer Frankes testified that Magill was bleeding heavily from his leg, but was placed on the ground face-down and handcuffed. Officer Frankes stated he noticed a .45 caliber handgun under the brake pedal, partially concealed by a baseball cap.

4

At the shooting scene, citizens arrived to assist Officers Goodman and Gonzalez while waiting on medical personnel.  Both officers had been shot in their leg, while Officer Goodman sustained an additional shot to the neck.  The evidence technicians with the Corpus Christi Police Department recovered both .40 and .45 caliber bullet casings from the scene where the shooting occurred, including some that had ricocheted into a neighboring house.  Officer Gonzalez testified that he shot his .40 caliber department-issued handgun, while Officer Goodman stated that he did not shoot his department-issued handgun.  Carolyn Martinez, a firearms examiner with the Corpus Christi Police Department, testified that she had analyzed the weapons and determined that the .40 caliber casings found at the scene were fired from Officer Gonzalez's gun and that Officer Goodman had not fired his weapon.

Doctors Osbert Blow, Daniel Roberts, and Rishi Dholakia testified that each treated Magill, Officer Goodman, and Officer Gonzalez.  According to their testimony, Magill had surgery to repair a deflated lung and another surgery to repair an artery in his leg and fix the bones.  Officer Goodman had two gunshot wounds:  one to the neck and one to the leg.  Dr. Dholakia testified that some of the bullet fragments were lodged in Officer Goodman's spine, but were left in his body to prevent any further damage.  Officer Gonzalez had a gunshot wound to his leg in which the bullet exited his body.

After a crime scene investigator found a white crystal substance in Magill's shorts collected from the hospital, the Department of Public Safety Crime Lab tested the substance. Roman Gonzales, a forensic scientist, testified that the white crystal substance had tested positive for methamphetamine.

Corpus Christi Police crime scene investigator Diego Rivera collected the .45 caliber handgun from the SUV crash scene. He stated there were two cartridges in the handgun when recovered and no casings or cartridges in the SUV.

Martinez testified regarding the shell casings found at the scene, and also testified that they had noticed ricochet marks on the sidewalk. Martinez stated that bullets had been recovered from inside a nearby home. Based on her investigation, Martinez had determined that Officer Goodman had not fired his weapon, but that Officer Gonzalez's weapon had been fired at least sixteen times. Martinez also stated that the recovered .45 caliber handgun had a capacity of nine bullets, whereas the .40 caliber handgun had a capacity of sixteen. She also testified that fourteen .40 and two .45 caliber bullet casings were found at the scene.

The jury convicted Magill of all four counts as charged and sentenced him to forty-five years' imprisonment in the Texas Department of Criminal Justice–Institutional Division (TDCJ–ID) on counts one and two, two years' imprisonment in a state jail facility for count three, and one year imprisonment in a state jail facility for court four. This appeal followed.

## II.    JURY CHARGE ERROR

By his first issue, Magill alleges the trial court committed reversible error by providing an incorrect jury instruction relating to self-defense.

### A.    Standard of Review

All alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Appellate review of purported error in a jury charge involves a two-step process. *Id.* First, we determine whether the jury instruction is erroneous. *Id.* Second, if error

6

occurred, then an appellate court must analyze that error for harm. *Id.* The issue of error preservation is not relevant until harm is assessed because the degree of harm required for reversal depends on whether the error was preserved. *Id.*

If the "defendant never presents a proposed jury instruction (or fails to object to the lack of one), any potential error in the charge is reviewed only for 'egregious harm' under *Almanza*." *Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex. Crim. App. 2008) (citing *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g)). As in this case, when an "appellant d[oes] not object to the charge, the error does not result in reversal 'unless it was so egregious and created such harm that appellant was denied a fair trial.'" *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) (quoting *Almanza*, 686 S.W.2d at 171). "Errors that result in egregious harm are those that affect the 'very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Id.* at 461–62 (quoting *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).

The failure to preserve jury-charge error is not a bar to appellate review but rather establishes the degree of harm necessary to the reversal. *Warner*, 245 S.W.3d at 461. To establish harm, the "appellant must have suffered actual, rather than theoretical, harm." *Id.* Neither the State nor the appellant bears the burden on appeal to prove harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). "When assessing harm based on the particular facts of the case, we consider: (1) the charge; (2) the state of the evidence[,] including contested issues and the weight of the probative evidence; (3) the parties' arguments; and (4) all other relevant information in the record." *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011) (quoting *Hutch*, 922 S.W.2d at 171).

**B.     Charge of the Court**

In this case, Magill was given a jury instruction regarding self-defense, albeit an incorrect charge. The self-defense instruction contained in the jury charge stated:

14.

Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree that he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force.

A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, as above set out, and when he reasonably believes that such deadly force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force, *and if a reasonable person in the defendant's situation would not have retreated*.

By the term 'reasonable belief' as used herein is meant a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant.

By the term 'deadly force' as used herein is meant force that is intended or known by the person using it to cause, or in the manner of its use or intended use is capable of causing death or serious bodily injury.

The use of force against another is not justified in response to verbal provocation alone.

When a person is attacked with unlawful deadly force, or he reasonably believes he is under attack or attempted attack with unlawful deadly force, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury, then the law excuses or justifies such person in resorting to deadly force by any means at his command to the degree that he reasonably believes immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack. It is not necessary that there be an actual attack or attempted attack, as a person has the right to defend his life and person from apparent danger as fully and to the same extent as he would had the danger been real, provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and that he reasonably believed such deadly force was immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

8

In determining the existence of real or apparent danger, you should consider all the facts and circumstances in evidence before you, all relevant facts and circumstances surrounding the assault, if any, the previous relationship existing between the accused and Michael Goodman and Amador Gonzalez, together with all relevant facts and circumstances going to show the condition of the mind of the defendant at the time of the offense, and in considering such circumstances, you should place yourselves in the defendant's position at that time and view them from his standpoint alone.

15.

## AS TO COUNT 1

Under self-defense, if you find from the evidence beyond a reasonable doubt that on the occasion in question the defendant, TRAVIS MAGILL, did shoot Michael Goodman with a firearm, which amounted to more than mere preparation but failed to effect the commission of the offense intended, and the said Michael Goodman was then and there a peace officer who was acting in the lawful discharge of an official duty, and the defendant knew Michael Goodman was a peace officer, as alleged in the indictment, but you further find from the evidence, as viewed from the standpoint of the defendant at the time, that from the words or conduct, or both, of Michael Goodman, it reasonably appeared to the defendant that his life or person was in danger and there was created in his mind a reasonable expectation of fear or death or serious bodily injury from the use of unlawful deadly force at the hands of Michael Goodman, and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against Michael Goodman's use or attempted use of unlawful deadly force, he shot with a firearm, and *that a reasonable person in the defendant's situation would not have retreated*, then you should acquit the defendant on the grounds of self-defense, or, if you have a reasonable doubt as to whether or not the defendant was acting in self-defense on said occasion and under the circumstances, then you should give the defendant the benefit of the doubt and say by your verdict 'not guilty.'

16.

## AS TO COUNT 2

Under self-defense, if you find from the evidence beyond a reasonable doubt that on the occasion in question the defendant, TRAVIS MAGILL, did shoot Amador Gonzalez with a firearm, which amounted to more than mere preparation but failed to effect the commission of the offense intended, and the said Amador Gonzalez was then and there a peace officer

who was acting in the lawful discharge of an official duty, and the defendant knew Amador Gonzalez was a peace officer, as alleged in the indictment, but you further find from the evidence, as viewed from the standpoint of the defendant at the time, that from the words or conduct, or both, of Amador Gonzalez, it reasonably appeared to the defendant that his life or person was in danger and there was created in his mind a reasonable expectation of fear or death or serious bodily injury from the use of unlawful deadly force at the hands of Amador Gonzalez, and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against Amador Gonzalez's use or attempted use of unlawful deadly force, he shot with a firearm, *and that a reasonable person in the defendant's situation would not have retreated*, then you should acquit the defendant on the grounds of self-defense, or, if you have a reasonable doubt as to whether or not the defendant was acting in self-defense on said occasion and under the circumstances, then you should give the defendant the benefit of the doubt and say by your verdict 'not guilty.'

### 17.

The use of force against another is not justified to resist an arrest or search that the defendant knows is being made by a peace officer, or by a person acting in a peace officer's presence and at this direction, even though the arrest or search is unlawful, unless the resistance is justified under the following circumstances:

The use of force to resist an arrest or search is justified:

a)  if, before the defendant offers any resistance, the peace officer or person acting at his direction uses or attempts to use greater force than necessary to make the arrest or search; and

b)  when and to the degree the defendant reasonably believes the force is immediately necessary to protect himself against the peace officer's or other person's use or attempted use of greater force necessary.

'Reasonable belief' means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant.

### 18.

Now, therefore, if you believe from the evidence beyond a reasonable doubt that the defendant resisted an arrest or search that the defendant knew was being made by a peace officer or by a person acting in a peace officer's presence and at his direction, even though the arrest or search was unlawful, you will find against the defendant's claim of self-defense; unless

you further find or have a reasonable doubt thereof, that before the defendant offered any resistance, if any, the peace officer or person acting at his direction used or attempted to use greater force than necessary to make the arrest or search; and you further find, or have a reasonable doubt thereof, that the defendant reasonably believed that force when and to the degree used, if it was, was immediately necessary to protect himself against the peace officer's or other person's use or attempted use of greater force than necessary, then the defendant's right of self-defense would not be lessened, and you will decide the issue of self-defense in accordance with the law on that subject heretofore given you.

(Emphasis added).

## C.    Applicable Law and Discussion

A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of the trial court's opinion about the credibility of the defense. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). This rule is designed to ensure that the jury, not the trial court, will decide the relative credibility of the evidence. *Id.* A defendant need not testify in order to raise a defense. *VanBrackle v. State*, 179 S.W.3d 708, 712 (Tex. App.—Austin 2005, no pet.). Defensive issues may be raised by the testimony of any witnesses, even those called by the State. *Id.* In deciding whether a defensive theory is raised, the evidence is viewed in the light most favorable to the defense. *Id.* at 713.

Magill requested the trial court include a jury instruction for a lesser included offense of deadly conduct, an instruction for necessity, and an instruction for self-defense. In support of the self-defense instruction, Magill argued to the trial court there was some evidence supported by the record. Magill stated:

Magill      You have that through the dash cam video. You have that through testimony of Mr. Perkins who says that—that he saw Mr. Goodman with a baton poking at Mr. Magill. The dash cam video shows that he's doing nothing but standing there when—

11

<br>

when Officer Gonzalez pulls up. Further dash cam video shows nobody shooting but Officer Magill (sic) and shows—

Trial Court:    Whoa, whoa.

Magill:    I mean, Officer Gonzalez and show Travis fleeing—

Trial Court:    Yeah, I think you've got an issue if you don't put it in, [State], so I'm gonna allow it.

Neither Magill nor the State objected to the wording in the jury charge. However, the jury charge contained language relating to a defendant's obligation to retreat to be entitled to a self-defense instruction. The Texas Legislature deleted the provision of the code requiring a defendant to "retreat" in 2007. Acts of May 27, 1995, 74th Leg., R.S., ch. 235, 1995 Tex. Sess. Law Serv. Ch. 235 (amended 2007) (current version at TEX. PENAL CODE ANN. § 9.32). Previously, in order to be entitled to use deadly force, the defendant must have attempted to retreat. Currently, section 9.32 reads, in relevant part:

(a)    A person is justified in using deadly force against another:

    (1)    if the actor would be justified in using deadly force against the other under Section 9.31; and

    (2)    when and to the degree the actor reasonably believes the deadly force is immediately necessary;

        (A)    to protect the actor against the other's use or attempted use of deadly force. . . .

TEX. PENAL CODE ANN. § 9.32(a) (West, Westlaw through 2017 1st C.S.).

**(1)    Duty to Retreat Language**

Before 2007, the deadly-force self-defense statute contained a provision imposing a general duty to retreat. *Morales v. State*, 357 S.W.3d 1, 6 (Tex. Crim. App. 2011). At that time, a jury instruction regarding a general duty to retreat was appropriate. *Id.* But the statute no longer contains the language regarding a general duty to retreat. *Id.* In

12

situations where the Legislature has not specifically negated a duty to retreat, the prosecutor can argue the failure to retreat as a relevant factor in determining the defendant's mental state and the reasonableness of his conduct, but the jury cannot be instructed regarding retreat because such an instruction would be a comment on the weight of the evidence.[1]  *Id.*

But that does not mean that the trial court should submit a jury instruction regarding a general duty to retreat.  *Id.*  "[S]pecial non-statutory instructions, even when they relate to statutory offenses or defenses, generally have no place in the jury charge."  *Id.* (quoting *Walters v. State*, 247 S.W.3d 204, 211 (Tex. Crim. App. 2007)).  If a matter is contained within a relevant statute, the trial judge may appropriately instruct the jury on the wording of the statute.  *Id.*  But if the Legislature decides to remove the matter from the statute, then the statue no longer authorizes the inclusion of the matter in the jury charge.  *Id.*  Though the matter might still be a relevant evidentiary issue in the prosecution, the unauthorized inclusion of the instruction constitutes a comment on the weight of the evidence.  *Id.*

---

[1] In 2007, the legislature also added provisions where in certain situations involving deadly force, a person does not have a duty to retreat, namely:

(c)     A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force as described by this section.

(d)     For the purposes of Subsection (a)(2), in determining whether an action described by Subsection (c) reasonably believed that the use of deadly force was necessary, a finder of fact may not consider whether the actor failed to retreat.

*Morales v. State*, 357 S.W.3d 1, 5 (Tex. Crim. App. 2011) (quoting Tex. Penal Code Ann. § 9.32 (c), (d) (West, Westlaw through 2017 1st C.S.).

Because the current wording in the penal code was not used and a deleted provision was included, we find there was error in the jury instructions regarding self-defense.[2] Due to the finding of error and Magill's lack of objection to the language contained in the jury charge, we analyze for egregious harm. *See Oursbourn*, 259 S.W.3d at 174.

### (2)   Egregious Harm Analysis

### (a)   Jury Charge

In conducting our analysis of whether the trial court's instructions to the jury regarding a duty to retreat caused egregious harm to Magill, we first look at the charge as a whole. *See Cosio*, 353 S.W.3d at 777. The charge properly instructed the jury that a person commits attempted capital murder of a peace officer if he intentionally or knowingly attempts to cause the death of an individual he knows to be a peace officer. The charge also defined the applicable mental states for the offense. It then instructed the jury that the use of deadly force could be justified if used in self-defense. In explaining the law of self-defense, the trial court instructed the jury three times that the defense was not available if Magill had a duty to retreat. The charge also described self-defense is not justified to resist an arrest or search by a peace officer, as well as the law of necessity.

The charge, in three different places, impermissibly instructed the jury to determine whether or not there was a duty to retreat. Nothing in the remainder of the charge instructed the jury that it should not determine, as a general matter, whether a duty to

---

[2] Additionally, the State concedes the jury instruction was erroneous and the language regarding Magill's duty to retreat should not have been included.

14

retreat existed. Accordingly, the remainder of the charge did not alleviate any harm caused by the incorrect instructions. *See id.*

In further evaluating the entire jury charge, the charge also included a definition of "reasonable doubt."[3] The charge defined "reasonable doubt" as

> a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his or her own affairs.
>
> Proof beyond a reasonable doubt, therefore, must be proof of such convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

This instruction is a partial "reasonable doubt" instruction previously required under *Geesa v. State.* 820 S.W.2d 154, 162 (Tex. Crim. App. 1991). However, in *Paulson v. State*, the court of criminal appeals overruled the portion of *Geesa* that required trial courts to instruct juries on the definition of reasonable doubt. 28 S.W.3d 570, 572 (Tex. Crim. App. 2000). That court also held it was "better practice to give no definition of reasonable doubt at all to the jury." *Id.* at 573.

Due to the improper self-defense instruction and inclusion of a definition of "reasonable doubt" which has been overruled, we find that the language of the jury charge favors a finding of harm.

### (b) State of the Evidence

Next, we must consider the state of the evidence and determine whether the jury charge error related to a contested issue. *See Cosio*, 353 S.W.3d at 777. Magill's defense

---

[3] Even though the trial court addressed the inclusion of the definition of "reasonable doubt" with both the State and Magill, stated the law had been changed, and the definition should be removed from the jury charge, Magill's counsel stated neither side objected and that they agreed upon the charge. The trial court left the definition in the charge.

15

at trial was either that he shot Goodman and Gonzalez in self-defense or Gonzalez shot Goodman. The errors in the jury charge were directed at a contested issue in the case. The State asserts that Magill was not entitled to a self-defense instruction because the evidence raised was speculative and could not have affected the jury's decision.[4] Magill argues that there was evidence presented in the dash camera video that does not show Magill shooting. In addition to the dash camera video, Magill points to the testimony of Perkins. Although Perkins stated that Magill shot first and then Officer Gonzalez shot, he kept stating that the incident happened "simultaneously." We cannot conclude that the evidence was so weak as to not entitle Magill to the self-defense instruction being sent to the jury. This favors a finding of harm.

### (c)     Parties Argument

Third, we consider counsels' arguments. *See Cosio*, 353 S.W.3d at 777. Both sides addressed the self-defense instruction in their closing arguments.

Magill argued the jurors were to stand in Magill's shoes and evaluate the apparent danger to determine if he was entitled to use deadly force. Magill additionally argued that Officer Gonzalez saw the interaction between Officer Goodman and Magill, drew his gun as he left his vehicle, and things escalated instantly. Magill also addressed the dash camera video which showed Magill being compliant to the police encounter and Magill and Officer Goodman falling simultaneously as Officer Gonzalez approached. He argued that due to bullets ricocheting, Officer Goodman could have been shot by Officer Gonzalez.

The State argued the jury should disregard the instruction on self-defense, defense from excessive force, and necessity because none of them applied in this case. According

---

[4] However, the State did not object to the inclusion of a self-defense instruction at the jury charge conference.

16

to the State, Magill had no right to use deadly force, fired first at Officer Goodman, and Officer Gonzalez returned fire in response to Magill's initial shots.

Because the State did not emphasize any necessity to retreat during its closing argument, this factor strongly disfavors a finding of harm.

### (d)    Any Other Relevant Information

Magill's claim of self-defense was one of two plausible situations he argued occurred. Whether Magill was justified in using self-defense was a question for the jury. *See Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991) (explaining that the issue of self-defense is issue of fact to be determined by a jury). However, we conclude that the errors in the jury charge did not prevent the jury from considering Magill's self-defense claim.

Reviewing the entire record, we cannot say the charge errors caused egregious harm to Magill. We overrule Magill's first issue.

### IV.    SUFFICIENCY OF AFFIRMATIVE DEFENSE

By his second issue, Magill argues that evidence is legally and factually insufficient to support the jury's rejection of his affirmative defense of self-defense.

### A.    Standard of Review

When reviewing a jury's rejection of an affirmative defense, we apply both a legal and factual sufficiency standard. *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We use "traditional Texas civil burdens of proof and standards of review in the context of affirmative defenses where the rejection of an affirmative defense is established by a 'preponderance of the evidence.'" *Id.*

In determining legal sufficiency of the evidence to support an adverse finding on an affirmative defense, we look to:

> When an appellant asserts that there is no evidence to support an adverse finding on which she had the burden of proof, we construe the issue as an assertion that the contrary was established as a matter of law. We first search the record for evidence favorable to the findings, disregarding all contrary evidence *unless a reasonable factfinder could not*. If we find no evidence supporting the finding, we then determine whether the contrary was established as a matter of law.

*Id.* (quoting *One Ford Mustang VIN 1FAFP40471F207859 v. State*, 231 S.W.3d 445, 449 (Tex. App.—Waco 2007, no pet.)). In reviewing the legal sufficiency of the evidence to support an adverse finding on the affirmative defense of self-defense, we first look for evidence ("more than a mere scintilla") that supports the jury's implied finding that Magill did not act in self-defense, and we disregard all evidence of Magill's argument that he acted in self-defense unless a reasonable factfinder could not disregard that evidence. *Id.* If no evidence supports the jury's finding that Magill did not act in self-defense, then we search the record to see if Magill established, as a matter of law, that he did act in self-defense. *Id.* If the record reveals evidence supporting Magill's position that he did act in self-defense, but that the evidence was subject to a credibility assessment and was evidence that a reasonable jury was entitled to disbelieve, we will not consider that evidence in our matter-of-law assessment. *Id.* at 670. Only if the appealing party establishes that the evidence conclusively proves his affirmative defense and "that no reasonable jury was free to think otherwise," may the reviewing court conclude that the evidence is legally insufficient to support the jury's rejection of the defendant's affirmative defense. *Id.* (quoting *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009)). Applying that standard to criminal cases, we can find that the defendant is entitled

18

to an acquittal on appeal despite the jury's adverse finding on his affirmative defense "only if the evidence conclusively establishes his affirmative defense under the modified two-step *Sterner* test." *Id.* (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex. 1989)) (stating the standard of review that applies when a claim of legally sufficient evidence to support adverse finding is raised).

A defendant may also raise a factual sufficiency challenge to the jury's adverse finding on his affirmative defense. *Id.* To determine factual sufficiency, we adopt the civil standards of factual sufficiency review because the burden of proof is that of "preponderance of the evidence," the same burden as in civil proceedings. *Id.* (citing *Meraz v. State*, 785 S.W.2d 146, 147 (Tex. Crim. App. 1990) (en banc)). In making a factual-sufficiency claim, the defendant is asserting that, considering the entire body of evidence, the jury's adverse finding on his affirmative defense was so "against the great weight and preponderance" of that evidence to be manifestly unjust. *Id.* (citing *Meraz*, 785 S.W.2d at 154–55). In the factual-sufficiency review of a rejected affirmative defense, an appellate court views the entirety of the evidence in a neutral light, but it may not usurp the function of the jury by substituting its judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony. *Id.* Therefore, an appellate court may sustain a defendant's factual-sufficiency claim only if, after setting out the relevant evidence and explaining precisely how the contrary evidence greatly outweighs the evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. *Id.* If an appellate court conducting a factual-sufficiency review finds that the evidence supporting the affirmative defense so greatly outweighs the State's contrary

19

evidence that the verdict is manifestly unjust, then the appellate court may reverse the trial court's judgment and remand the case for a new trial. *Id*. at 672. The remedy in both civil and criminal cases for an appellate reversal based upon a factual-sufficiency claim that the jury's verdict is against the great weight of the evidence is a new trial, not an acquittal. *Id.*

### B. Applicable Law and Discussion

Magill does not challenge the sufficiency of the evidence to support the jury's finding of the essential elements of attempted capital murder, but instead challenges the sufficiency of the evidence to support the jury's rejection of his self-defense claim.

To prevail on a claim of self-defense with the use of deadly force, a defendant must prove he was justified in using deadly force. *See* TEX. PENAL CODE ANN. § 9.32(a). Once a defendant has produced some evidence raising the issue of self-defense, the State bears the burden of persuasion to show beyond a reasonable doubt that the defendant's actions were not justified. *Valverde v. State*, 490 S.W.3d 526, 527 (Tex. App.—San Antonio 2016, pet. ref'd). To meet this burden of persuasion, the State is not required to produce additional evidence. *Id*. at 528. When a jury finds the defendant guilty, there is an implicit finding against the defensive theory. *Id*.; *see Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). In conducting a legal sufficiency review, we defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Valverde*, 490 S.W.3d at 528.

This is consistent with a request for a self-defense instruction at trial since "a defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense *including* the culpable mental state, but

20

interposes [a] justification to excuse the otherwise criminal conduct." *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007) (emphasis in original). With regard to the essential elements of the offense, the jury was charged that Magill committed the offense of attempted capital murder if, with the intent to cause serious bodily injury to Officers Goodman and Gonzalez, he committed an act clearly dangerous to human life that could have caused Officers Goodman and Gonzalez's death. In this case, the evidence from multiple witnesses showed that Magill shot Officers Goodman and Gonzalez, which was an act clearly dangerous to human life. Accordingly, consistent with Magill's request for the self-defense instruction, the evidence establishes every essential element of the offense of attempted capital murder beyond a reasonable doubt. *See Saxton,* 804 S.W.2d at 914. We next examine whether the jury "also would have found against [Magill] on the self-defense issue beyond a reasonable doubt." *Id.*

Although Magill attempted to show a need for self-defense through witness testimony, the majority of the witnesses who saw the actual shooting observed Magill shoot first; Officer Gonzalez returned fire. The officers testified that Magill shot both of them with his handgun. Eyewitness Perkins stated that Magill shot at Officer Goodman and that Officer Goodman only prodded Magill's backpack with his baton. Other witnesses near the crime scene testified to hearing two different types of sounds when the different caliber guns were shot.

In our review, we defer to the jury's assessment of the credibility of the witnesses, and the jury in this case could have disbelieved Magill's argument for self-defense. *See Id.* at 529; *see also Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *Smith v. State*, 355 S.W.3d 138, 146 (Tex.App.—Houston [1st Dist.] 2011, pet. ref'd) (noting that

21

defendant's testimony does not conclusively prove a claim of self-defense because jury could reject the testimony). Although Magill argued that he was justified in acting in self-defense, none of the witnesses presented testified to seeing the police officers use deadly force against Magill, which would be required to allow him justification to use deadly force. *See Hooper v. State*, 214 S.W.3d 9, 15–16 (Tex. Crim. App. 2007) (noting juries are permitted to draw multiple reasonable inferences from the evidence (direct or circumstantial) as long as each inference is supported by the evidence presented at trial). Finally, the jury was entitled to consider Magill's actions in leaving the scene after the shooting. *See Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007) (noting "factfinder may draw an inference of guilt from the circumstance of flight"); *Kirk v. State*, 421 S.W.3d 772, 781 (Tex .App.—Fort Worth 2014, pet. ref'd.) (referencing flight from scene as evidence jury could consider in rejecting self-defense claim).

Having reviewed all of the evidence in the light most favorable to the prosecution, we conclude the jury rationally could have found each element of the offense was proven beyond a reasonable doubt, and rationally could have rejected Magill's self-defense claim. *See* Matlock, 392 S.W.3d at 667. We overrule Magill's second issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.


GINA M. BENAVIDES,
Justice


Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
5th day of April, 2018.